UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RICHARD GILLIARD,

                      Plaintiff,

      -against-

THE CITY OF NEW YORK, CHRISTIAN ALLEN,
individually and in his official capacity, ANTHONY
COPPOLA, individually and in his official capacity,
KEVIN COSTELLO, individually and in his official
capacity, and JOHN/JANE DOES, Nos. 1-10,
individually and in their official capacities (members
of the New York City Police Department whose
names are presently unknown to plaintiff),

                      Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-5187 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Richard Gilliard brings suit against Defendants Officer Christian Allen, Officer

Kevin Costello, Officer Anthony Coppola (together, the "Individual Defendants"), and the City

of New York (the "City") under 42 U.S.C. § 1983 ("Section 1983") and New York law. Before

the court is Defendants' motion for summary judgment. For the reasons set forth below,

Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

### A.    Factual Background[1]

      On June 13, 2010, Allen and Costello were on patrol near the Marcy Houses, a housing

development in Brooklyn maintained by the New York City Housing Authority ("NYCHA").

(Def. 56.1 St. (Dkt. 38) ¶¶ 4, 6, 12; Pl. 56.1 St. (Dkt. 41) ¶¶ 4, 6, 12.) The rooftops of three

---

[1]     Except as otherwise noted, the following facts are undisputed or taken in the light most favorable
to Plaintiff.

buildings in the Marcy Houses—those located at 621, 623, and 625 Park Avenue—are connected to each other. (Def. 56.1 St. ¶ 8; Pl. 56.1 St. ¶ 8.) Access to the roof of any of these buildings is restricted to NYCHA and NYPD employees; violators may be arrested. (Def. 56.1 St. ¶ 5; Pl. 56.1 St. ¶ 5.)

According to Costello and Allen, at approximately 7:25 p.m., they observed a black male with cornrows in his hair on the roof of 625 Park Avenue peering over the fence that surrounds the rooftop. (See Def. 56.1 St. ¶¶ 12-14.) Costello testified that as soon as he saw this individual, the trespasser "took off out of site from the roof." (Costello Dep. (Ex. I to Haber Decl. (Dkt. 37-9)) at 14:18-21; see also Def. 56.1 St. ¶ 16.) Because Costello knew that the roofs of 623 and 625 Park Avenue were connected, Costello decided to enter the lobby of 623 Park Avenue to "think two steps ahead" of the trespasser and cut him off. (Costello Dep. at 14:18-24, 15:15-16:5; Def. 56.1 St. ¶¶ 17-18; see also Costello Dep. at 15:18-16:1 ("I figured [that the trespasser] would think that I was going to come up 625 [Park Avenue] so in turn, I tried to think one step ahead of the individual and tried to get into the next adjoining building, which I believed he was coming down, which I believe was 623 Park Avenue.").) Together, Costello and Allen "walk[ed]" into the lobby of 623 Park Avenue. (See Def. 56.1 St. ¶ 12; Pl. 56.1 St. ¶ 12; see also Costello Dep. at 16:6-10; Allen Dep. (Ex. G. to Haber Decl. (Dkt. 37-7)) at 17:8-18:10.) Neither officer entered 625 Park Avenue in an attempt to confront the trespasser. (See Allen Dep. at 17:9-18:8; Costello Dep. at 15:15-16:10.)

As they entered the lobby, Costello and Allen saw Plaintiff—an African American who at the time had cornrows in his hair (Def. 56.1 St. ¶ 15; Pl. 56.1 St. ¶ 15)—emerge from the lobby elevator and purportedly stopped him to investigate the trespassing (Def. 56.1 St. ¶ 20). Costello and Allen asked Plaintiff where he had been coming from and if he had been visiting anyone in

the building. (Id. ¶ 21; Pl. 56.1 St. ¶ 21.) Plaintiff, who was calm and relaxed, told the officers

that he had just come from a birthday party in Apartment 6D of 623 Park Avenue, his son's

mother's apartment. (Def. 56.1 St. ¶ 22; Pl. 56.1 St. ¶¶ 22, 26.) Costello and Allen asked for

Plaintiff's identification, which he eventually provided. (Def. 56.1 St. ¶ 23; Pl. 56.1 St. ¶ 23.)

At this point, Costello observed a bulge in Plaintiff's waistband, frisked Plaintiff, and recovered

a cell phone holder. (Def. 56.1 St. ¶ 24; Pl. 56.1 St. ¶ 24.) Sometime during the questioning,

Defendant Coppola and his partner, Officer Dominico Sarris, entered the lobby of 623 Avenue.

(Def. 56.1 St. ¶ 25; Pl. 56.1 St. ¶ 25.) Costello debriefed Coppola on the situation. (Coppola

Dep. (Ex. D to Perry Decl. (Dkt 40-1)) at 22:4-23:3.)

Costello and Allen then told Plaintiff that they were headed upstairs to verify that

Plaintiff had in fact been coming from Apartment 6D. (Def. 56.1 St. ¶ 27; Pl. 56.1 St. ¶ 27.)

Costello and Allen entered the elevator. (Def. 56.1 St. ¶ 28; Pl. 56.1 St. ¶ 28.) Plaintiff also

entered the elevator for purportedly two reasons: (1) one officer, he claims, said he could do so;

and (2) to ensure that the police approached the correct apartment, because he had been

previously erroneously prosecuted for trespassing in a similar situation where the police failed to

actually verify his whereabouts. (See Def. 56.1 St. ¶ 28; Pl. 56.1 St. ¶ 28; see also Gilliard Dep.

(Ex. A to Perry Decl. (Dkt. 40-1)) at 54:23-55:9, 57:2-24.) As Plaintiff entered the elevator, he

turned on his Blackberry cell phone and began to record a video. (See Ex. J to Haber Decl. (Dkt.

37-10) ("Pl. Videos"); see also Def. 56.1 St. ¶ 30; Pl. 56.1 St. ¶ 30.) Plaintiff kept the phone in

his hand during the entire incident, producing two videos. (See Pl. 56.1 St. ¶ 29; Gilliard Dep. at

63:15-19; Pl. Videos.)

Costello, Allen, and Coppola instructed Plaintiff to exit the elevator and remain in the

lobby. (See Def. 56.1 St. ¶ 31; Pl. 56.1 St. ¶ 31.) Plaintiff refused to exit, repeating that he was

going to accompany the officers upstairs. (Def. 56.1 St. ¶ 32; Pl. 56.1 St. ¶ 32.) At this point, Coppola grabbed Plaintiff by his neck, removed him from the elevator, and threw him face-first against a wall that was approximately four-to-six feet away. (See Def. 56.1 St. ¶ 33; Pl. 56.1 St. ¶ 33; see also Gilliard Dep. at 60:2-61:7.) Plaintiff suffered a "busted" lip and experienced neck and back pain, which was particularly bothersome because Plaintiff had a bullet lodged near his spine from a prior incident. (Def. 56.1 St. ¶ 38; see Pl. 56.1 St. ¶ 38.) On a scale of one-to-ten, Plaintiff's pain was a "ten." (Gilliard Dep. at 27:1-18, 70:8-13.) After Plaintiff told Coppola that he busted his lip, Coppola responded: "I don't give a shit . . . . You're under arrest for discon [disorderly conduct], you did not obey a lawful order. That's it. It's not a big deal." (Pl. Videos.)

During this altercation in the elevator and lobby, other civilians were "coming and going." (Gilliard Dep. at 69:19-25.) Although no one attempted to use the elevator during this time (Gillard Aff. (Dkt. 40-3) ¶ 2),[2] a few people had at least walked through the lobby and a few others began to congregate (see Pl. 56.1 St. ¶ 34; see also Pl. Videos; Allen Dep. (Ex. B to Perry Decl. (Dkt. 40-1)) at 45:6-46:12; Coppola Dep. at 27:14-25).

With Plaintiff secure, Allen and Costello went upstairs and verified that Plaintiff had, in fact, been in Apartment 6D. (Def. 56.1 St. ¶¶ 35-36; Pl. 56.1 St. ¶¶ 35-36.) Neither Allen nor Costello checked the roof to see if the trespasser was still there. (See Pl. 56. St. ¶ 36; Costello Dep., Ex. C to Perry Decl. (Dkt. 40-1) at 47:5-12.) Gillard was detained for a "couple of hours." (Gilliard Dep. at 81:4-84:1.)

---

[2]     Defendants claim that Plaintiff's affidavit submitted in opposition to their motion—in which he swears that no civilians attempted to enter, exit, or use the elevator—must be stricken because it contradicts his prior testimony that a number of people were in the lobby and observed him being removed from the elevator. (See Def. Reply Mem. (Dkt. 44) at 6.) But there is nothing contradictory about testifying that people were gathered in the lobby, but were not hoping to use the elevator.

Costello issued Plaintiff a summons for disorderly conduct, citing New York Penal Law § 240.20(2); he wrote on the summons: "Deft was observed causing a public inconvenience in a public place by acting in a loud and boisterous manner." (Def. 56.1 St. ¶ 37; Pl. 56.1 St. ¶ 37; Ex. K to Haber Decl.) On August 11, 2010, the summons was dismissed for legal insufficiency. (See Def. 56.1 St. ¶ 43; Pl. 56.1 St. ¶ 43; Ex. Q to Haber Decl. (Dkt. 37-17).)

Plaintiff did not tell the police that he needed medical attention, but after being released, he immediately visited the Woodhull Hospital Emergency Room. (Def. 56.1 St. ¶¶ 39-40; Pl. 56.1 St. ¶¶ 39-40.) Plaintiff was treated for a lacerated lip and discharged with a prescription for 325 milligrams of Acetaminophen. (Def. 56.1 St. ¶ 41; Pl. 56.1 St. ¶ 41.) It took two and a half weeks "or more" for Plaintiff's injuries to heal, although as of his deposition on October 11, 2011, he still felt bothersome scar tissue in his mouth. (Def. 56.1 St. ¶ 42; Pl. 56.1 St. ¶ 42; Gillard Dep. at 86:10-24.)

## B.    Procedural History

On September 10, 2010, Plaintiff served a Notice of Claim on the City. (See Def. 56.1 St. ¶ 44; Pl. 56.1 St. ¶ 44.) On October 13, 2010, the City served a notice of a hearing under New York General Municipal Law § 50-h ("50-h Hearing") on Plaintiff. (See Def. 56.1 St. ¶ 45; Pl. 56.1 St. ¶ 45.) See also N.Y. Gen. Mun. L. § 50-h (requiring a potential tort claimant against a city to appear for an examination upon demand). Upon receiving this letter, Plaintiff's counsel at the time called the New York City Comptroller's Office to request an adjournment. (See Pl. 56.1 St. ¶ 46; Kneitel Decl. (Dkt. 40-2) ¶ 4.) The woman who answered the phone granted the adjournment, but Plaintiff's counsel never received a letter from the Comptroller's Office re-scheduling the 50-h Hearing, and Plaintiff never appeared for any such hearing. (See Pl. 56.1 St. ¶ 46; Kneitel Decl. ¶ 5.)

On November 9, 2010, Plaintiff filed his Complaint against the City, one Jane Doe Defendant, and ten John Doe Defendants. (See Compl. (Dkt. 1).) On May 18, 2011, Plaintiff filed an Amended Complaint adding Allen, Coppola, and Costello as Defendants. (See Am. Compl. (Dkt. 15).) Plaintiff alleges six causes of action against the Individual Defendants under Section 1983: (1) false arrest; (2) excessive force; (3) retaliation for exercise of the right to free speech under the First Amendment; (4) malicious prosecution; (5) malicious abuse of process; and (6) failure to intervene. (See id. ¶¶ 21-32.) He also asserts a claim against the City under Section 1983 pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). (See Am. Compl. ¶¶ 33-40.) He alleges six state law claims against the Individual Defendants: (1) false arrest; (2) assault; (3) battery; (4) malicious prosecution; (5) malicious abuse of process; and (6) retaliation for exercise of the right to free speech under the New York State Constitution. (See id. ¶¶ 46-57.) Plaintiff alleges two state law claims against the City: (1) negligent screening, hiring and retention; and (2) negligent training and supervision. (See id. ¶¶ 58-61.)

On December 16, 2011, after discovery on Plaintiff's claims against the Individual Defendants was completed and after brief discovery on his Monell claim, Defendants requested a pre-motion conference in anticipation of their intended motion for summary judgment. (See Dec. 16, 2011, Def. Ltr. (Dkt. 30).) In response, Plaintiff requested that discovery on his Monell claim against the City proceed while Defendants' motion for summary judgment was pending. (See Dec. 23, 2011, Pl. Ltr. (Dkt. 31) at 3.) On March 1, 2012, the parties appeared at the pre-motion conference. (See Mar. 1, 2012, Minute Entry.) At the hearing, the court granted Defendants' leave to file their motion for summary judgment and denied Plaintiff's request to proceed with Monell discovery during the pendency of the motion without prejudice. (Id.) The court granted Plaintiff leave to move to re-open discovery if his claims were not resolved at

summary judgment. (See id.) The parties then filed their respective briefs. (See Def. Mem.

(Dkt. 39); Pl. Opp'n Mem. (Dkt. 42); Def. Reply Mem.)

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The burden to make this showing rests upon the party moving for summary judgment.

See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "[T]he court must draw all

reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods.,

Inc., 530 U.S. 133, 149 (2000).

A fact is material if its existence or non-existence "might affect the outcome of the suit

under the governing law," and an issue of fact is genuine if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  A genuine issue is created by "specific facts" grounded in

testimony or other admissible evidence, not by "mere allegations or denials" of the adverse

party's pleadings, id., "by the presentation of assertions that are conclusory," Patterson v. Cnty.

of Onieda, 375 F.3d 206, 219 (2d Cir. 2004), or "by conjecture[] or speculation" from the

non-movant, Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).  However, "[t]o the

extent that . . . inconsistencies [between a witness's testimony and the rest of the record] can only

be resolved based upon credibility determinations, such questions of witness credibility are to be

decided by the jury." Reeves v. Johnson Controls World Servs., Inc. 140 F.3d 144, 157 (2d Cir.

1998), superseded by statute on other grounds as stated in Hilton v. Wright, 673 F.3d 120 (2d

Cir. 2012); see also United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) ("Resolutions of

credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.").

## III.   DISCUSSION

Because the issue of whether the Individual Defendants had probable cause to arrest Plaintiff frames much of Defendants' motion, the court addresses this issue first. The court then turns to Plaintiff's specific claims.

### A.   Probable Cause

Probable cause exists when, based on the totality of the circumstances, the arresting officer has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause to arrest an individual for obstruction of governmental administration, therefore, requires the police to have "reasonably trustworthy information" that each of these four elements has been met. Zellner, 494 F.3d at 368; see also Alhovsky v. Paul, 406 F. App'x 535, 536 (2d Cir. 2011) ("Probable cause must extend to every element of the crime for which a person is arrested.").

Defendants maintain that the Individual Defendants had probable cause to arrest Plaintiff for obstruction of governmental administration and for disorderly conduct. The court examines

8

these in turn.

1.     Obstruction of Governmental Administration

"Under New York law, obstructing governmental administration has four elements:
'(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function
(4) by means of intimidation, force or interference.'" Cameron v. City of New York, 598 F.3d
50, 68 (2d Cir. 2010) (quoting Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995)); see also N.Y.
Penal Law § 195.05. For the third element—that police were performing an "official
function"—to be satisfied, the police's conduct must have been "lawful." Cameron, 598 F.3d at
68. And the legality of a police investigation depends on whether the officers had a reasonable
suspicion that criminal activity was afoot when they first stopped the suspect. See Terry v. Ohio,
392 U.S. 1, 26-30 (1968); see also People v. Bowden, 928 N.Y.S.2d 12, 13 (N.Y. App. Div. 1st
Dep't 2011) ("[I]ndividuals of whom the police have no reasonable suspicion of criminal activity
have the right not to answer an officer's question, or even to run from the police, without those
acts creating grounds to detain that individual."). Probable cause for obstruction of
governmental administration, therefore, exists only where the police's initial stop was supported
by reasonable suspicion. See Williams v. City of Mount Vernon, 428 F. Supp. 2d 146, 156-57
(S.D.N.Y. 2006) (finding that the plaintiff sufficiently pled the absence of probable cause for a
violation of obstruction of governmental administration where the initial stop was not supported
by reasonable suspicion); cf. Cameron, 598 F.3d at 68 ("[I]f [the officers] knew that they did not
have probable cause to arrest [the plaintiff] for any crime . . . then they could not have probable
cause to arrest [the plaintiff] for obstructing governmental administration."); United States v.
Olavarria, No. 09-CR-870 (PGG), 2011 WL 1529190, at * 7 (S.D.N.Y. Apr. 20, 2011) ("Where
the police are engaged in an illegal arrest, other unlawful seizure, or an unlawful search, no

9

charge for obstruction of governmental investigation will lie."). In other words, if the police "did not possess a reasonable suspicion that [Plaintiff] was involved in criminal activity," then the police "were not authorized to attempt to detain [him and he was] free to walk away." People v. Lupinacci, 595 N.Y.S.2d 76, 76 (N.Y. App. Div. 2d Dep't 1993).

Defendants claim that Plaintiff's refusal to exit the elevator interfered with the police's attempt to verify his stated reason for being inside the building as part of its trespass investigation. (See Def. Mem. at 8-9; Def. Reply Mem. at 2-5.) Plaintiff does not dispute that the officers' testimony concerning the alleged trespasser, if true, would constitute reasonable suspicion to stop Plaintiff and would justify the officers' order to leave the elevator. Rather, his sole basis for arguing that the police did not have probable cause to arrest him for obstruction of governmental administration is that the officers fabricated their statements regarding a trespasser on the roof of 625 Park Avenue to justify their unlawful stop, meaning that they had no reasonable suspicion to stop him in the lobby.[3] (See Pl. Opp'n Mem. at 11-13.) Plaintiff identifies four specific facts in support of this assertion: (1) even though the officers purportedly saw the trespasser on the roof of 625 Park Avenue, they entered the lobby of 623 Park Avenue; (2) Costello and Allen both entered 623 Park Avenue, instead of splitting up between the two buildings to cover both possible escape routes; (3) Allen testified that he "walked," not that he ran, into 623 Park Avenue; and (4) no police officer ever checked the roof to search for the supposed trespasser. (Id. at 11-12; see also Pl. 56.1 St. ¶ 12.) Defendants argue that Plaintiff's

---

[3]     Defendants claim that Plaintiff has not pled an unlawful stop claim. (See Def. Reply Mem. at 2.)
But Plaintiff has not, and does not purport to, plead an independent claim for an improper stop. Plaintiff
challenges the legality of the stop only to rebut Defendants' claim that there was probable cause to
support his arrest.

claims of perjury are "conclusory" and insufficient to create a genuine issue of material fact. (Def. Reply Mem. at 2-3.)

It is axiomatic that a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986). Simply asserting that a party is lying is insufficient to create a genuine issue of material fact. See Henry v. Bloomingdale's, Inc., No. 95-CV-4861 (JG), 1997 WL 1068693, at *6 n.2 (E.D.N.Y. Nov. 3, 1997) (granting summary judgment where "plaintiff ha[d] presented no evidence, other than her speculation that defendant [wa]s lying," that certain evidence was false). But where the non-movant can identify facts in the record that cast doubt on a witness's testimony such that the ultimate issue "turns largely on [that witness's] credibility[,] . . . a genuine issue of material fact exists precluding summary judgment." Dillon v. Morano, 497 F.3d 247, 254-54 (2d Cir. 2007). Put differently, "[t]o the extent that . . . inconsistencies [in the record] can only be resolved based upon credibility determinations, such questions of witness credibility are to be decided by the jury." Reeves, 140 F.3d at 157; see also Boutsis v. Home Depot, 371 F. App'x 142, 144 (2d Cir. 2010) (reversing grant of summary judgment, in part, because portions of a witness's testimony were "inconsistent"); Matya v. United Refining Co., 323 F. App'x 65, 67 (2d Cir. 2009) (same); Adams v. Master Carvers of Jamestown, Ltd., 91 F. App'x 718, 725 (2d Cir. 2004) ("The evidence offered by Adams to counter the non-discriminatory explanations provided by the defendants and the inconsistencies in the defendants' stated reasons throughout the course of this case raise a genuine issue of material fact as to the credibility of the defendants' assertions."); cf. Distory v. Cont'l Grp., Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) (granting summary judgment because, "[v]iewing the

11

evidence in the light most favorable to plaintiff, there [we]re no material inconsistencies that might cause a reasonable jury to doubt" the defendant's version of events).

Here, Plaintiff does not rely on mere speculation to dispute the officers' proffered reason for stopping him. He identifies four specific, undisputed facts that, if fully credited, allow a reasonable jury to infer that the officers concocted their story about a trespasser. (See Pl. Opp'n Mem. at 11-12.) For example, it strikes the court as a bit odd that after seeing the alleged trespasser "t[ake] off"—with no indication as to which direction he went—the police would walk *only* into the adjoining building in an attempt to think "two steps ahead" of him. (Pl. 56.1 St. ¶ 12.) Not only that, even after confirming that Plaintiff's stated reason for being in the building was true, no officer performed even a cursory additional check to locate the trespasser. (See id.) Of course, if the officers were telling the truth, at that point such a check may have been useless because the trespasser may have already left the scene. And a reasonable jury could certainly credit their attempt to head off the trespasser together. But the fact remains that the ultimate issue as to whether there was a trespasser—which, if true, would clearly give them reasonable suspicion to stop Plaintiff, meaning that his subsequent refusal leave the elevator would constitute obstruction with governmental administration—"turns largely on [the officers'] credibility."[4] Dillon, 497 F.3d at 253. The court cannot make such a determination at this stage. Therefore, viewing the facts in the light most favorable to Plaintiff, the police never observed any trespasser, stopped Plaintiff without any reasonable suspicion, and therefore did not have probable cause to arrest him for obstruction of governmental administration.

---

[4]      It should also be noted that Allen's credibility may be especially weak because he testified that he was "almost positive" that Plaintiff told police he was coming from Apartment 6C (see Allen Dep. at 21:15-23), whereas all parties agree that Plaintiff stated that he was coming from Apartment 6D (see Def. 56.1 St. ¶ 22; Pl. 56.1 St. ¶ 22).

## 2. Disorderly Conduct

Under New York law, in relevant part, "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," he (1) "makes unreasonable noise[,] . . . [(2)] obstructs . . . pedestrian traffic[;] . . . or [(3)] congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." N.Y. Penal L. §§ 240.20(2), (5)-(6).

Defendants claim that Plaintiff's admitted refusal to leave the elevator when ordered to do so "interfere[ed] with the officers' trespass investigation and obstruct[ed] pedestrian traffic," providing probable cause for his arrest. (Def. Mem. at 8.) But as discussed above, a reasonable jury could conclude that the officers were not conducting a lawful trespass investigation, meaning that there would be no "lawful order of the police to disperse." And despite Defendants' claim that the video Plaintiff took with his cell phone "clearly shows that other individuals were present in the lobby at the time of the incident" (Def. Mem. at 8 (citing Pl. Videos)), it is not at all clear whether a group had formed or whether pedestrians were blocked from passing through the lobby or using the elevator. The video shows only one person in the lobby for a very brief period of time. (See Pl. Videos.) A reasonable jury could also credit Plaintiff's claim that civilians were "coming and going," and that no one attempted to use the elevator during the incident. (Gilliard Dep. at 66:20-22; Gilliard Aff. ¶ 2.) Moreover, an issue of fact remains as to whether Plaintiff was being so loud "that a reasonable person, under the circumstances, would not tolerate." Provost v. City of Newburgh, 262 F.3d 146, 159 (2d Cir. 2001) (citation omitted) (interpreting "unreasonable noise" as used in N.Y. Penal L. § 240.20(2)). Contrary to Defendants' assertions, the video indicates that the officers, not Plaintiff, were screaming expletives and causing a disturbance. (See Pl. Videos.)

Defendants' cited authority is inapposite. In Crenshaw v. City of Mount Vernon, 372 F. App'x 202 (2d Cir. 2010), an unreported case with no precedential value, see 2d Cir. Local Rule 32.1.1, the Second Circuit held that a police officer was entitled to qualified immunity—which, as discussed below, requires only that the defendant had "arguable probable cause"—and did not opine on the underlying constitutional violation.[5] See Crenshaw, 372 F. App'x at 206. In Posr v. Killackey, No. 01-CV-2320 (LTS) (GWG), 2003 U.S. Dist. LEXIS 12755 (S.D.N.Y. July 25, 2003) (report and recommendation),[6] adopted by 2003 U.S. Dist. LEXIS 22617 (S.D.N.Y. Dec. 17, 2003), the plaintiff's own version of the facts had demonstrated that he obstructed a courthouse doorway. See id. at *13-14. And in People v. Maher, 520 N.Y.S.2d 309 (N.Y. City Crim. Ct. 1987), the defendant was found guilty of disorderly conduct *after a bench trial* in which the court found that she disobeyed ten *lawful* orders over a period of two and a half hours. See id. at 310.

Taking the facts in the light most favorable to Plaintiff—as the court must at this stage— a reasonable jury could determine that Plaintiff did not make unreasonable noise, did not impede any pedestrian traffic, and did not fail to comply with a lawful order. Thus, the court cannot conclude as a matter of law that it was objectively reasonable to believe that Plaintiff had done so, meaning that there may not have been probable cause for Plaintiff's arrest for disorderly

---

[5]    The Second Circuit's decision in Crenshaw is less than clear in this regard. After stating that the officer had "reasonably trustworthy information" to warrant his belief that the plaintiff had committed disorderly conduct—which mirrors the probable cause standard, see Williams v. Town of Greenburgh, 535 F.3d 71, 79 (2d Cir. 2008)—it concluded that the officer was entitled to qualified immunity, which requires a lower showing. See Crenshaw, 372 F. App'x at 206.

[6]    Although Defendants' counsel fails to mention it, the case cited in Defendants' brief is actually a Magistrate Judge's report and recommendation that the district court adopted because, after neither party objected, it did not find any clear error. See Posr v. Killackey, No. 01-CV-2320 (LTS) (GWG), 2003 U.S. Dist. LEXIS 22617, at *1-2 (S.D.N.Y. Dec. 17, 2003).

conduct. Defendants' lack of probable cause to arrest Plaintiff for any cime informs the court's analysis of his specific claims, as set forth below.

## B. Claims Against the Individual Defendants[7]

### 1. False Arrest

"To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Wevant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). Similarly, under New York law, a police officer is personally liable for conducting an unlawful arrest. See Jenkins v. City of New York, 478 F.3d 76, 78 (2d Cir. 2007). As to claims brought under Section 1983, although "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure [underlying a false arrest claim]," Burg v. Gosselin, 591 F.3d 95, 96 n.3 (2d Cir. 2010), "'a plaintiff pleads seizure when he alleges that a police officer held on to his identification and ordered him to stay put while the police officer wrote out a summons,'" Amore v. Novarro, 624 F.3d 522, 532 n.13 (2d Cir. 2010) (quoting Burg, 591 F.3d at 96 n.3)).

"'The existence of probable cause is an absolute defense to a false arrest claim.'" Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010) (quoting Jaegly v. Vouch, 439 F.3d 149 152 (2d Cir. 2006)). If the police had probable cause to arrest a defendant for any charge, even one not "invoked by the arresting officer at the time of arrest," the claim fails. Jaegly, 439 F.3d at 154.

---

[7]    Except where otherwise noted, the court jointly addresses the Section 1983 and state law claims that have the same standards.

Viewing the facts in the light most favorable to Plaintiff, he has set out a viable false arrest claim under both Section 1983 and New York law. The police held him against his will in the lobby of 623 Park Avenue for a "couple" of hours. (See Def. 56.1 St. ¶ 35; Gilliard Dep. at 81:4-84:1.) This is a decidedly greater restriction than issuing only a summons, and clearly constitutes a seizure. See Amore, 624 F.3d at 532 n.13; cf. Burg, 591 F.3d at 98 ("We hold that the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, *without further restrictions*, does not constitute a Fourth Amendment seizure." (emphasis added)). And as detailed above, Defendants' lone ground for dismissing the false arrest claim—that the Individual Defendants had probable cause to arrest Plaintiff—fails.

Although there is a question of fact that prevents a determination of probable cause as a matter of law, the Individual Defendants may still be immune from prosecution under Section 1983 and New York law for false arrest if they had *arguable* probable cause. See Amore, 624 F.3d at 536 ("In determining whether an officer is entitled to qualified immunity for a false arrest claim in the absence of probable cause, we examine whether there was 'arguable probable cause.'" (citation omitted)); Jenkins, 478 F.3d at 88 ("Similar to the federal doctrine, if, when the facts are construed in favor of the plaintiff, the officer's probable cause determination was objectively reasonable, the court under New York law should dismiss the plaintiff's false arrest claim at the summary judgment stage."); see also Alhovsky, 406 F. App'x at 537 ("Because . . . the arresting officers had at least arguable probable cause to arrest Alhovsky and they detained him for an objectively reasonable amount of time, the officers have state law immunity to Alhovsky's state law claims of false arrest and false imprisonment.").

"Arguable probable exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on

16

whether the probable cause test was met." Amore, 624 F.3d at 536 (internal quotation marks omitted). To determine whether an officer's belief was "objectively reasonable," the court looks to the "information possessed by the officer at the time of the arrest, but [does] not consider [his] subjective intent, motives, or beliefs." Id. (internal quotation marks omitted). "This forgiving standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

As discussed above, a reasonable jury could determine that the alleged trespasser never existed, which would mean that the police did not have even arguable probable cause to believe that Plaintiff had obstructed governmental administration.

But given the undisputed facts, it was objectively reasonable for the police to at least *believe* that there was probable cause that he had committed disorderly conduct. Although it is unclear whether it was objectively reasonable for the police to believe that Plaintiff's actions *actually* impeded any pedestrians, it is undisputed that civilians had gathered around, which *could* lead a reasonable officer to believe that their path was so impeded.

Plaintiff's video demonstrates that at least one person was present in the lobby when he refused to exit the elevator. (See Pl. Videos.) Plaintiff also testified that civilians were "coming and going," although none wished to use the elevator. (Pl. 56.1 St. ¶ 34; Gilliard Aff. ¶ 2.) Plaintiff further highlights that Allen testified that "several" tenants had passed through the lobby as Allen and Costello frisked Plaintiff, and that Coppola testified that civilians began to gather after Plaintiff was removed from the elevator. (Pl. 56.1 St. ¶ 34; see also Allen Dep. at 44:23-45:5; Coppola Dep. (Ex. H to Haber Decl. (Dkt. 37-8)) at 27:14-25.) A reasonable officer focused on Plaintiff, who indisputably disobeyed the officers' orders, could have thought that

17

one of these civilians wished to use the elevator or was impeded from passing through the lobby. Phrased differently, although there is an issue of fact as to whether the police reasonably believed that civilians were *actually* obstructed from walking through the lobby or using the elevator, there is no such issue as to whether an officer *could* have reasonably thought so. See Lennon, 66 F.3d at 424-25 ("Perhaps a rational jury could find that the officers lacked probable cause and should not have arrested [the plaintiff]; however, in our view, a rational jury could not find that the officers' judgment was so flawed that no reasonable officer would have made a similar choice."); cf. Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997) ("A review of the circumstances of this case reveals that while the State Troopers, as stipulated, did not in fact have actual probable cause to arrest the plaintiff [for disorderly conduct under Connecticut law], they certainly had 'arguable' probable cause, and accordingly, it was objectively reasonable for the State Troopers to believe that probable cause existed."). The Individual Defendants therefore had arguable probable cause that Plaintiff had committed disorderly conduct, see N.Y. Penal L. § 240.20(5), and the false arrest claims against them are dismissed.

### 2. Excessive Force, Assault, and Battery

Excessive force claims brought under Section 1983 are "judged under the Fourth Amendment's 'objective reasonableness' standard." Terranova v. New York, 676 F.3d 305, 308 (2d Cir. 2012) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). The same is true for claims of assault and battery brought under New York law.[8] See Kramer v. City of New York,

---

[8]     To be precise, under New York law an "assault" is "'an intentional placing of another person in fear of imminent harm or offensive contact[ and a] 'battery' is an intentional wrongful physical contact with another person without consent.'" Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001) (citation omitted). The court agrees with the many courts that have equated the standard for assault and battery with excessive force. See, e.g., Mesa v. City of New York, No. 09-CV-10464 (JPO), 2013 WL 31002, at *27 (S.D.N.Y. Jan. 3, 2013) ("New York law regarding assault and battery generally parallels federal

No. 04-CV-106 (HB), 2004 WL 2429811, at *11 (S.D.N.Y. Nov. 1, 2004) ("In the context of state officers performing their lawful duties, New York State law regarding assault and battery parallels the federal laws regarding excessive force."). Under this standard, the determinative question is whether the officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Spinelli v. City of New York, 579 F.3d 160, 167 (2d Cir. 2009) (citation omitted).

In determining whether the amount of force used is reasonable, courts consider "'the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest.'" Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)). Furthermore, courts "are required to make allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (internal quotations marks omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. (internal quotation marks omitted). However, "[g]iven the fact-specific nature of the [objective reasonableness] inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable fact-finder could conclude that the officers' conduct was objectively unreasonable." Amnesty America v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004).

Defendants challenge Plaintiff's excessive force claim against Coppola on two grounds:

---

law regarding excessive force . . . ." (internal quotation marks omitted); Castro v. Cnty. of Nassau, 739 F. Supp. 2d 153, 178 n.17 (E.D.N.Y. 2010) (stating that "the same standard applies to these claims").

(1) that the use of force was not excessive or unreasonable under the circumstances; and (2) that Plaintiff's injuries were de minimis. (See Def. Mem. at 11-14; Def. Reply Mem. at 6-8.) Neither is meritorious.

First, whether or not Coppola's use of force was justified is a matter properly decided by a jury. Taking the facts in the light most favorable to Plaintiff, the police stopped him without any cause, they did not allow him to accompany them to verify his whereabouts, and then Coppola threw him by his neck some four-to-six feet into a wall. (See supra Part III.A; see also Pl. Videos.) Coppola did testify that Plaintiff was holding an "unknown black object" in his hand when Coppola removed him from the elevator. (Coppola Dep. at 25:23-26:19.) But Costello had previously frisked Plaintiff for his safety, recovering Plaintiff's cell phone holder. (Def. 56.1 St. ¶ 24.) Costello also "debriefed" Coppola on the situation when he arrived, which likely included this fact. (See Coppola Dep. at 22:21-23:3.) And Allen testified that the only time Plaintiff was asked to show his hands was when he was initially stopped in the lobby, implying that the officers were never concerned about the "unknown object." (See Allen Dep. at 20:13-20:16, 20:24-21:6.) Moreover, the video taken by Plaintiff demonstrates that after removing Plaintiff, Coppola did not try to confiscate this "unknown" object, but told Plaintiff that he was being detained for failure to obey a lawful order without mentioning the object or any potential danger. (Pl. Videos.) It is only after Coppola seems to realize that he is being recorded that he knocks the phone away. (See id.) Even if Coppola did believe that Plaintiff's cell phone posed a concern, a reasonable jury could determine that throwing Plaintiff—who was calm and collected (see Gilliard Dep. at 49:15-20; see also Pl. Videos.)—into the wall, busting his lip, was unreasonable. This is all the more possible if the jury determines that the officers' story regarding the alleged trespasser was a lie. All told, the court cannot conclude that "no

reasonable fact-finder could conclude that [Coppola's] conduct was objectively unreasonable." Amnesty America, 361 F.3d at 123.

Second, Defendants' claim that Plaintiff's injuries were de minimis and insufficient as a matter of law to support his excessive force claim also fails.[9] (See Def. Mem. at 13-14.) Although Plaintiff did not tell the officers he needed medical attention (Gilliard Dep. at 71:7-9), he testified that he went to the emergency room immediately after being released, where he was treated for his busted lip and pain that, on a scale of one-to-ten, was a ten (id. at 27:14-18, 70:23-71:3). Plaintiff also testified that his injuries did not heal for two and a half weeks "or more" and caused bothersome scar tissue to form. (See Def. 56.1 St. ¶ 42; Pl. 56.1 St. ¶ 42; Gillard Dep. at 86:10-24.) Therefore, Plaintiff's injuries are not so minor as to be unactionable as a matter of law. See, e.g., Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) (noting that accusations that officers "twist[ed] plaintiff's arm, push[ed] him into the back seat of a police car, pull[ed] him by the scruff of the neck, and str[uck] him in the ribs" may support a claim for excessive force, to the extent that such acts were unreasonable and excessive); Hodge v. Village of Southampton, 838 F. Supp. 2d 67, 77-78 (E.D.N.Y. 2012) (denying summary judgment where plaintiff was treated for bruising at hospital and discharged with ice and Motrin).[10]

---

[9] For one thing, the court is not convinced that de minimis injuries preclude an excessive force claim based upon the Fourth Amendment as a matter of law. Although a few district courts have implied this, see, e.g., Cunningham v. City of New York, 04-CV-10232 (LBS), 2007 WL 2743580, at *6 (S.D.N.Y. Sept. 18, 2007), the court is not aware of any Second Circuit precedent establishing this rule. Rather, this doctrine is typically applied to prisoners' claims of excessive force brought under the Eighth Amendment, where different interests are at stake. See, e.g., Wright v. Goord, 554 F.3d 255, 269 (2d Cir. 2009) ("[T]he Eight Amendment's prohibition against cruel and unusual punishment does not extend to 'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" (citation omitted)).

[10] Defendants' cited authority (see Def. Mem. at 12-13) is unpersuasive. Cunningham v. City of New York, concerned a plaintiff's "temporary" discomfort. 2007 WL 2743580 at *7. In Cunningham v. Rodriguez, No. 01-CV-1123 (DC), 2002 WL 31654960 (S.D.N.Y. Nov. 22, 2002), a medical technician

21

For similar reasons, issues of fact preclude granting summary judgment to Coppola on immunity grounds.[11] It is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited." Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002). And a reasonable jury could very well determine that: (1) while in the elevator Plaintiff's hands were removed from his pockets; (2) Costello and Allen had previously frisked Plaintiff and found no weapons, which they told Coppola; (3) there was no reason to think Plaintiff posed any danger; (4) Plaintiff was calm and collected; and (5) Coppola threw Plaintiff into a wall by his neck four-to-six feet away. It is not possible to "determine whether [Coppola] reasonably believed that [his] force was not excessive when several material facts are still in dispute," Curry v. City of Syracuse, 316 F.3d 324, 334 (2d Cir. 2003), and summary judgment must therefore be denied.[12]

3.    Free Speech Retaliation

"To prevail on [a] free speech [retaliation] claim, plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or

---

found that the plaintiff had "no injuries or complaints." Id. at *5. And in Dzwonczyk v. Syracuse City Police Dep't, 710 F. Supp. 2d 248 (N.D.N.Y. 2008), the plaintiff admitted that he "did not sustain any serious injuries." Id. at 263.

[11]    New York's good faith immunity doctrine parallels federal qualified immunity jurisprudence for these claims. See Mesa, 2013 WL 31002, at *27 (dismissing assault and battery claims on state immunity grounds because the officers' conduct was objectively reasonable under federal law); Davis v. Cnty. of Nassau, No. 11-CV-0076 (LDW) (ARL), 2013 WL 66021, at *7 (E.D.N.Y. Jan. 3, 2013) ("The court's holdings as to the presence of issues of material fact concerning Plaintiff's federal claims [including excessive force, against which the defendants asserted qualified immunity,] also preclude the entry of judgment as to Plaintiff's state law claims [including assault and battery, against which the defendants asserted good faith immunity].").

[12]    Although Coppola's motion for summary judgment on this claim is denied, there is no indication that Allen or Costello used any force against Plaintiff. Indeed, Plaintiff seems to abandon any claim of joint activity involving Allen or Costello. (See Pl. Opp'n Mem. at 16-18 (arguing repeatedly that "Officer Coppola used excessive force").) Any excessive force claims lodged against these two Defendants (see Am. Compl. ¶ 24 (alleging that "Defendants" used excessive force)) are therefore dismissed.

22

substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). The same is true for free speech retaliation claims brought under the New York State Constitution.[13]

Defendants challenge Plaintiff's ability to raise an issue of fact as to the second and third elements. Specifically, Defendants claim that: (1) a reasonable jury could not find that the police issued Plaintiff a summons because of the fact that he recorded the incident with his cell phone; and (2) there is no admissible evidence[14] that Plaintiff's speech was actually chilled. (See Def. Mem. at 15.) Plaintiff maintains that as to the second prong, crediting the evidence in his favor, "there is ample evidence that Officers Allen, Coppola, and Costello knew, at some point

---

[13]     Although the New York State Constitution "generally affords greater protection than the United States Constitution with regard to speech . . . [c]laims of free speech retaliation under Article I, section 8 of the New York State Constitution are governed by the same principles that apply under the First Amendment to the United States Constitution." Dotson v. Farrugia, No. 11-CV-1126 (PAE), 2012 WL 996997, at *8-9 (S.D.N.Y. Mar. 26, 2012) (internal quotation marks omitted); see Carter v. Inc. Village of Ocean Beach, 693 F. Supp. 2d 203, 212 (E.D.N.Y. 2010) ("[F]ree speech [retaliation] claims under Article I, Section 8 of the New York State Constitution are subject to the same analysis as free speech claims under the First Amendment."); cf. Nichik v. N.Y. City Transit Auth., No. 10-CV-5260 (JG), 2013 WL 142372, at *7 n.4 (E.D.N.Y. Jan. 11, 2013) ("The parties agree that claims of retaliation in violation of Article I, section 8 of the New York State Constitution are subject to the same analysis as First Amendment claims . . . .").

[14]     Defendants claim that Plaintiff's affidavit submitted in opposition to their motion for summary judgment, which states that he has "been reluctant to videotape police officers, even when they are engaged in misconduct, for fear that [he] will be re-arrested" (Gillard Aff. ¶ 3), contradicts his deposition testimony and must therefore be rejected. (Def. Reply Mem. at 9.) They point to Plaintiff's deposition at which he testified that there "is not anything he could do before the incident that he cannot do today because of his injuries sustained." (Id. (citing Gilliard Dep. at 87:25-88:3 [sic]).) Defendants' argument is, at best, frivolous. The three preceding questions posed by Defendants' counsel—who also authored the brief—demonstrate that Plaintiff was describing the lack of lingering *physical* effects from his *physical* injuries and that his answers were in no way connected to Plaintiff's subsequent speech or lack thereof. (See Gilliard Dep. at 87:20-88:2 ("Q. Did you seek treatment from any other doctor for the injuries you allegedly sustained? A. No. Did you see Dr. Lucas? A. No. Q. Are there any other physical injuries that you sustained? A. No. Q. As a result of the incident on June 13? A. No. Q. Is there anything you could do before the accident that you can't do now because of the injuries? A. No.").)

during the incident, that plaintiff was videotaping them." (Pl. Opp'n Mem. at 20.) Plaintiff cites only to his videos, arguing that after realizing he was being recorded, Coppola reached for the cell phone and turned his head away. (See id. (citing Pl. Videos).) Because the summons was issued later that evening, Plaintiff argues, "a jury could infer a causal connection to the videotaping." (Id.)

Given all of the undisputed evidence, however, a reasonable jury could not make such a causal connection. For one thing, the video clearly shows that Coppola told Plaintiff that he was under arrest for disorderly conduct because he disobeyed a lawful order. (Pl. Videos.) The video also demonstrates that the officers were concerned with Plaintiff's admitted refusal to exit the elevator. (Id.) It is also undisputed that pedestrians were present in the lobby during the altercation, which gave the officers arguable probable cause to arrest Plaintiff for disorderly conduct. (See Pl. 56.1 St. ¶ 34; Gilliard Dep. at 69:19-25.) All told, solely on the basis of Coppola's brief expression after apparently realizing that he was being recorded, a reasonable jury could not conclude that the summons was "motivated or substantially caused by" Plaintiff's First Amendment activity. Curley, 268 F.3d at 73; see also id. ("Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim."). Accordingly, Plaintiff's free speech retaliation claims brought under the First Amendment and the New York State Constitution are dismissed.[15]

_____

[15] The weakness of Plaintiff's argument is reflected by his lone citation—using a "cf." signal—to Espinal v. Goord, 558 F.3d 119 (2d Cir. 2009). (See Pl. Opp'n Mem. at 20.) In Espinal, the Second Circuit held that the six-month period between the dismissal of a lawsuit and a thirty-minute-long beating was insufficient to sustain a motion to dismiss. See 558 F.3d at 129-30. But in Espinal, no evidence suggested that the defendants beat the plaintiff for some reason other than his First Amendment activity— they simply denied having beaten the plaintiff at all. See id. at 122. The district court had dismissed the plaintiff's claim because of the passage of time and the fact that the defendants were not aware of the lawsuit. See id. at 129. Here, at the summary judgment stage, there is a mountain of evidence demonstrating that the police issued Plaintiff his summons because of his refusal to exit the elevator and

4.    Malicious Prosecution

The elements of a malicious prosecution claim under Section 1983 and New York law are: "(1) commencement of a criminal proceeding, (2) favorable termination of the proceeding, (3) lack of probable cause, and (4) institution of the proceedings with actual malice." Swartz v. Insogna, No. 11-2846-CV, 2013 WL 28364, at *5 (2d Cir. Jan. 3, 2013); see also id. ("The elements of a malicious prosecution claim under section 1983 are derived from applicable state law."); Cornejo v. Bell, 592 F.3d 121, 129 (2d Cir. 2010) (setting out these elements). Also, "to be actionable under section 1983 there must be a post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." Swartz, 2013 WL 28364, at *5.

Plaintiff's claims here fail for two reasons: (1) Plaintiff did not obtain a "favorable termination of the proceeding," as defined under New York law; and (2) as to Plaintiff's Section 1983 claim, he did not suffer a "post-arraignment seizure" as defined under the Fourth Amendment.

First, the New York Court of Appeals has stated that "[a] criminal proceeding terminates favorable to the accused, for purpose of a malicious prosecution claim, when the final disposition of the proceeding involves the merits and indicates the accused's innocence." MacFawn v. Krelser, 88 N.Y.2d 859, 860 (1996). Where a court "conclude[s] that the facts alleged by the People were not legally sufficient to support the charge . . . [t]he People [are] at liberty to amend the information to correct the deficiency." Id. This, according to the Court of Appeals, means that if "the criminal action was disposed of on procedural grounds [and the] complaint in the

---

the potential interference with pedestrian traffic, which forecloses any reasonable inference that the summons was motivated by the videotaping.

civil action fail[s] to state a cause of action for malicious prosecution." Id.; see also Garrett v. Port Auth. of N.Y. and N.J., No. 04-CV-7368 (DC), 2006 WL 2266298, at *5 (S.D.N.Y. Aug. 8, 2006) ("[I]n MacFawn, the Court of Appeals concluded that the dismissal for legal insufficiency was not a favorable termination for purposes of malicious prosecution."). Since Plaintiff's summons was unquestionably dismissed for legal insufficiency (see Pl. 56.1 St. ¶ 43; Def. 56.1 St. ¶ 43; Ex. Q to Haber Decl.), his malicious prosecution claims fail as a matter of law.

Second, as to his Section 1983 claim, Plaintiff cannot show that he suffered a "seizure" as contemplated by the Fourth Amendment because it is undisputed that Plaintiff was issued a non-felony summons that was dismissed for legal insufficiency less than two months after it was issued. (Def. 56.1 St. ¶¶ 37, 43; Pl. 56.1 St. ¶¶ 37, 43; see also Ex. Q to Haber Decl. (showing that Plaintiff's summons was dismissed and not indicating any court appearances)); Def. Mem. at 11 ("Plaintiff was not arraigned, not required to post bail, had no travel restrictions, and was not required to appear in criminal court more than once, if at all.").) This level of post-arrest seizure is insufficient to support a malicious prosecution claim under Section 1983.[16] See Mesa, 2013 WL 31002, at *15 ("With respect to Mesa's C summons, a warrantless summons, coupled with a court appearance, is generally insufficient to give rise to a malicious prosecution claim—under both § 1983 and state law.").

5.     Malicious Abuse of Process

To establish a malicious abuse of process claim under both Section 1983 and New York law, a plaintiff must establish that the defendants "(1) employ[ed] regularly issued legal process

---

[16]     Although Plaintiff has not suffered a Fourth Amendment "seizure" with respect to his malicious prosecution claim, his detainment in the lobby is sufficient to support his false arrest claim. See Mesa, 2013 WL 31002, at *15 ("[T]he fact that Mesa was detained before, not after, her arraignment is relevant to her claim for false arrest, but not to her claim for malicious prosecution.")

to compel performance or forbearance of some act, (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks omitted); see also Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) ("[W]e turn to state law to find the elements of the malicious abuse of process claim."). This requires a plaintiff to "establish that the defendants had an improper purpose in instigating the action." Savino, 331 F.3d at 77. "[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Id.

Plaintiff has not identified any evidence supporting any "collateral purpose beyond or in addition to his criminal prosecution." Id. At most, Defendants issued the summons with the improper *motive* of "cover[ing] up their abuse of authority in arresting plaintiff." (Am. Compl. ¶¶ 30, 55.) But an improper motive does not equate to an improper purpose; the Defendants "used the process of the court for the purpose for which the law created." Hauser v. Bartow, 273 N.Y. 370, 374 (1937); see Silver v. Kuehlbeck, 217 F. App'x 18, 21 (2d Cir. 2007). For these reasons, Plaintiff's malicious abuse of process claims are dismissed.[17]

---

[17]    The court notes that Plaintiff failed to even mention his malicious prosecution or malicious abuse of process claims in his opposition brief, which some courts have found sufficient grounds for dismissal. See, e.g., Liang v. Cafe Spice SB, Inc., No. 09-CV-1306 (JFB) (ETB), 2012 WL 5988766, at *22 n.27 (E.D.N.Y. Nov. 29, 2012) ("[T]he fact that plaintiff did not oppose defendants' motion for summary judgment on her claim of intentional infliction of emotional distress is also adequate grounds for granting summary judgment in defendants' favor on this claim."); Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); Arias v. NASDAQ/AMEX Mkt. Grp., No. 00-CV-9827 (MBM), 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing two of plaintiff's claims as "abandoned" where plaintiff's opposition papers "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on those claims); see also Local Civ. R. 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion

27

6.    Failure to Intervene

Under Section 1983, "'[a] law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.'" Jean-Laurent v. Wilkerson, 461 F. App'x 18, 21 (2d Cir. 2012) (quoting O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir.1988)). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id. (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). "Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001).

Plaintiff claims that Allen and Costello are liable for their failure to stop Coppola's alleged use of excessive force. (See Pl. Opp'n Mem. at 21-22.) Defendants' sole ground for summary judgment on this claim is that "Plaintiff has failed to establish a constitutional violation." (Def. Mem. at 17-18.) But as the court has determined above, Plaintiff's excessive force claim against Coppola may proceed to trial. His failure to intervene claim against Allen and Costello, therefore, may also proceed. See Anderson, 17 F.3d at 557 ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.").

---

. . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default."). But see Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) ("This Court has made clear, however, that where the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" (citation omitted)).

**B.     Claims Against the City**

   1.     Monell Liability

Because Plaintiff's excessive force and failure to intervene claims may proceed to trial

against the respective Individual Defendants, the City may also be liable under Monell.  See

Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012) ("Under the standards of Monell v.

Department of Social Services, a municipality can be held liable under Section 1983 if the

deprivation of the plaintiff's rights under federal law is caused by a governmental custom,

policy, or usage of the municipality." (citation omitted)); see also Wray v. City of New York,

490 F.3d 189, 195 (2d Cir. 2007) (requiring "a denial of a constitutional right" for Monell

liability).  And the City may also be liable for Plaintiff's false arrest claim—to the extent there

was a policy or custom responsible for his injury—because municipalities are not entitled to

qualified immunity.  See Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008).

The parties thus far have completed only limited Monell discovery.[18]  Plaintiff wishes to

re-open Monell discovery.  (See Dec. 23, 2011, Pl. Ltr. at 3.)  In their reply brief, Defendants

request that Monell discovery be stayed and the claim be bifurcated for purposes of trial.  (See

Def. Reply Mem. at 10.)  Because Plaintiff has not yet weighed in on this request, the parties are

instructed to confer and inform the court whether they agree to proceed to trial against the

Individual Defendants now and, if necessary, proceed to trial against the City thereafter.  If

Plaintiff does not agree, he may renew his motion to re-open Monell discovery, Defendants may

oppose any such motion and/or formally move for a bifurcated trial.  At that point, the parties

shall propose a joint briefing schedule for these motions.

---

[18]     To the extent Defendants seek summary judgment as to Plaintiff's Monell claim at this stage,
their motion is denied.  (See Mar. 1, 2012, Minute Entry ("If Plaintiffs' [sic] claims are not resolved at
summary judgment, Plaintiff may move to reopen discovery and the court will consider the request at that
time.").)

2.    State Law Claims

Defendants assert that all state claims against the City must be dismissed for Plaintiff's failure to comply with the Notice of Claim requirements under New York law.[19]  (See Def. Mem. at 23-25.)  Specifically, they assert that Plaintiff's failure to attend a hearing required by New York General Municipal Law section 50-h—without requesting an adjournment in writing—mandates dismissal.  Plaintiff counters that after receiving notice of the 50-h Hearing, his then-counsel received an adjournment from a member of the Comptroller's Office by phone, but the hearing was never rescheduled.  (See Pl. Opp'n Mem. at 25; Pl. 56.1 St. ¶ 46.)

As a condition precedent to bringing a state law tort claim against a municipality, a plaintiff must file a Notice of Claim within ninety days after her claim accrues.  See N.Y. Gen. Mun. L. § 50-e.  After receiving the Notice of Claim, the municipality may demand a 50-h Hearing to examine "the claimant relative to the occurrence and extent of the injuries or damages for which claim is made."  Id. § 50-h(1).  "[I]f the claimant fails to appear at the hearing or request an adjournment or postponement," the state law claims cannot proceed against the municipality.  Id. § 50-h(5).  Notice of claim requirements are construed "strictly" and "[f]ailure to comply with these requirements ordinarily requires dismissal for failure to state a cause of action."  Hardy v. N.Y. City Health & Hosp. Corp., 164 F.3d 789, 793-94 (2d Cir. 1999).

Here, Plaintiff's state law claims against the City must be dismissed regardless of the

_____

[19]    Defendants state generally that Plaintiff's failure means that "his state law claims are . . . barred and should be dismissed" (Def. Mem. at 25; see also Def. Reply Mem. at 10), apparently arguing that the state claims against both the City and the Individual Defendants should be dismissed.  But failure to comply with section 50-h precludes only claims against the City, not employees who are sued in their individual capacities alongside the City.  See N.Y. Gen. Mun. L. § 50-h ("Where a demand for examination has been served as provided in subdivision two of this section no action shall be commenced against *the city, county, town, village, fire district, or school district against which the claim is made* unless the claimant has duly complied with such demand for examination . . . ." (emphasis added)).

30

reason why he failed to appear for his 50-h Hearing. Although the Second Circuit has not definitively decided the issue, courts have placed the burden on the plaintiff to resolve any discrepancies regarding the rescheduling of a 50-h Hearing in accordance with the Second Circuit's directive to construe Notice of Claim requirements "strictly." See, e.g., Simon v. City of New York, No. 09-CV-1302 (ENV) (RER), 2011 WL 317975, at *15 n.17 (E.D.N.Y. Jan. 3, 2011) (report and recommendation) ("[E]ven if Simon did not get the notice of the rescheduled [50-h] hearing, precedent suggests that it is the claimant who is required to ensure that the hearing she has adjourned is rescheduled to a new date."), adopted by 2011 WL 344757 (E.D.N.Y. Feb. 1, 2011); cf. Kemp v. Cnty. of Suffolk, 878 N.Y.S.2d 135, 136 (N.Y. App. Div. 2d Dep't 2009) ("Under the circumstances of this case, where the plaintiff invoked his Fifth Amendment privilege against self-incrimination at the hearing pursuant to General Municipal Law § 50-h . . . the plaintiff, not the County defendants, was obligated to reschedule a continuation of the 50-h hearing after the criminal proceeding terminated two years later."). Disregarding any proffered reason is also good policy: while the City must handle the rescheduling of thousands of 50-h Hearings, a plaintiff is only concerned with her own and is in a better position to ensure that the parties are on the same page. For these reasons, Plaintiff's failure to attend the 50-h Hearing—no matter the reason—is a complete bar to his state law claims against the City.[20]

## IV.   CONCLUSION

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. The following claims may proceed to trial: (1) excessive force under Section 1983

---

[20]   Even if the court were to excuse a plaintiff's reasonable failure to appear for a 50-h Hearing, Plaintiff's previous counsel acted unreasonably. Obtaining an adjournment by phone, and failing to follow up with the Comptroller's Office where the viability of a portion of Plaintiff's case is on the line, is patently unreasonable.

against Coppola; (2) failure to intervene under Section 1983 against Allen and Costello; (3) assault under New York law against Coppola; and (4) battery under New York law against Coppola. Plaintiff's claims against the City under <u>Monell</u> predicated on these claims and Plaintiff's false arrest claim may also proceed. By February 22, 2013, the parties are to confer and provide the court either: (1) a stipulation to a bifurcated trial against the Individual Defendants, after which the parties may, if necessary, conduct <u>Monell</u> discovery; or (2) a proposed briefing schedule, if necessary, for Plaintiff's anticipated motion to re-open <u>Monell</u> discovery and/or Defendants' motion for a bifurcated trial.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
    February ⎤ , 2013

NICHOLAS G. GARAUFIS
United States District Judge

32